**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                                                    PLAINTIFF

v.                                              No. 4:14CR00186 JLH

ALPHONSO WYNN                                                                                                DEFENDANT

**OPINION AND ORDER**

A jury found Alphonso Wynn guilty of one count of threatening a federal official in violation of 18 U.S.C. § 115 and one count of transmitting threatening communications in interstate commerce in violation of 18 U.S.C. § 875(c). Wynn has moved for a new trial pursuant to Federal Rule of Criminal Procedure 33(a). In his motion for a new trial, Wynn argues that the evidence is insufficient to support his conviction because the government did not prove that a true threat was made and that his conviction must be set aside because the First Amendment protects his speech. Wynn also argues that this Court erred in the jury instructions because the instructions did not require proof of Wynn's intent to act on his threat nor did the instructions require that the intended victim of the threat be made aware of it and placed in fear. For the following reasons, Wynn's motion for a new trial is denied.

Wynn was an employee at the Veterans Administration Hospital. On Sunday, August 24, 2014, Andrew Horton was working at the V.A. as a supervisor with authority over Wynn. Tr. 43. According to Horton's testimony, Wynn told Horton that he wasn't going to work and was leaving. Tr. 44. In response, Horton told Wynn that Horton would carry him AWOL [absent without leave] and did so when Wynn left. Tr. 45.

Wynn went to the V.A. emergency room. Nurse James Alexander testified that Wynn's main complaint was that he was too stressed out to work and had been placed on AWOL. Tr. 52.

Alexander also testified that Wynn did not appear overly stressed out. Tr. 54. David Schmidt, the physician who treated Wynn in the E.R., testified that Wynn appeared "very relaxed." Tr. 63. Upon discharge, Wynn was given a work release note and a crisis hotline telephone number to call if he had thoughts of hurting himself or others. Tr. 75-76. Wynn returned and presented the note from the E.R. to Horton and left. Tr. 47-49.

The telephone number given to Wynn reaches a crisis hotline that veterans may call if they become suicidal or homicidal or otherwise confront a crisis. Tr. 82. Unit 3-K of the V.A. system is an acute psychiatric unit under lock and key. Tr. 80-81. Nurses on that unit are responsible for answering crisis hotline calls outside of normal business hours, such as on Sundays. Tr. 82. Nurses Kristen Kemp and Thomas Boyd both work in the 3-K unit and were working on Sunday, August 24, 2014.

Kemp spoke with Wynn on the crisis hotline twice. Tr. 88. Kemp testified that Wynn sounded angry and was ranting but was clear in what he said. Tr. 93-94. She took notes, introduced as Government Exhibit 2, which said:

> This patient called the local crisis hotline number having complaints of homicidal ideation toward his supervisor. Patient reports he is an employee who works for EMS in Little Rock. Patient states, "I just needed a day off because I am stressed and I have the time. My supervisor said he was going to AWOL me. I went outside for a couple hours and waited for him to come out and I had a gun."

Kemp also testified that aside from the note, she remembered Wynn saying "I want to kill that MF" and "I want to pop a cap in him, bang-bang, pow-pow." Tr. 88.

Kemp testified that Wynn said he had a gun, a specific target and wanted to kill his supervisor. *Id.* She also testified she doesn't always call the V.A. Police regarding threats because she can diffuse the situation and calm the caller down. Tr. 89. However, Kemp stated that Wynn

never calmed down, sounded angry and seemed to "accelerate." *Id.* Kemp also testified that the fact that Wynn had the means to carry out the threat also made her believe it was a credible threat. Tr. 89-90. Kemp contacted the V.A. Police. Tr. 89.

Boyd testified that when he took another call from Wynn on the crisis hotline, Wynn told him that Wynn had a pistol. Tr. 97. Boyd also testified that Wynn gave him a location, which he provided to V.A. Police. Tr. 99. Boyd testified that the police were notified because Wynn made a specific threat against his supervisor and he had a means to carry out the threat. *Id.*

V.A. Chief of Police Toni Hightower testified she was notified of the threat on August 24, 2014. Tr. 119. She testified it was very specific in nature because it was against a specific person and Wynn stated he had a gun. Tr. 119. At that time, the V.A. instituted I.D. checks at the hospital and notified the North Little Rock Police Department. Tr. 120. The North Little Rock Police Department was dispatched to Wynn's last known location, but he was not found. Tr. 121. The V.A. Police finally made contact with Wynn on Tuesday, August 26, 2014 when he entered the V.A. Tr. 125.

Federal Rule of Criminal Procedure 33(a) provides that, upon the defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." In considering a motion for new trial, a district court may weigh the evidence, judge the credibility of witnesses, and grant a new trial even if the verdict is supported by substantial evidence. *United States v. Amaya*, 731 F.3d 761, 764 (8th Cir. 2013).

> If the [district] court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*United States v. Malloy*, 614 F.3d 852, 862 (8th Cir. 2010) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). Nevertheless, the court's discretion to grant a new trial is not unlimited. *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). The authority granted to district courts under Rule 33 must be exercised "sparingly and with caution." *Id*. (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)); *see also Amaya*, 731 F.3d at 764. Motions for new trials based on the weight of the evidence are generally disfavored. *Campos*, 306 F.3d at 579.

"True threats" are not protected speech under the First Amendment. *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 1547-48, 155 L. Ed. 2d 535 (2003). The crimes with which Wynn was charged required evidence of a true threat. 18 U.S.C. § 115; 18 U.S.C. § 875(c). The jury received instructions to that effect and found that Wynn had made a true threat. As a matter of law, Wynn's speech did not fall within the First Amendment protections.

Wynn contends that there is insufficient evidence to support a finding that a true threat was made, an element of each crime of which he was convicted. The Eighth Circuit defines a true threat as "a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another." *United States v. Mabie*, 663 F.3d 322, 330 (8th Cir. 2011). *See also United States v. Nicklas*, 713 F.3d 435, 440 (8th Cir. 2013).

Wynn first argues the statement was only communicated to the V.A. crisis hotline nurses, not to his supervisor or anyone else. A threat must be intentionally communicated to the object of the threat or a third party. *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002). Wynn intentionally communicated his threat to the V.A. crisis hotline nurses, so this element of the crimes was proven.

Next, Wynn argues that he did not make the threat about a specific person on the hotline, but identified the subject of his comment to investigators when he denied intent to carry out the threat. Kemp testified that Wynn called the crisis hotline and said "he was really stressed-out and that he wanted to inflict harm on his supervisor because he was unable to take sick leave and they were going to give him AWOL." Tr. 84-85. Boyd also testified that Wynn threatened his supervisor. Tr. 96. A reasonable jury could find that Wynn made a threat against a specific person.

Last, Wynn argues a reasonable recipient would not have considered Wynn's statement to be a serious expression of an intent to harm or cause injury. The testimony of Kemp and Boyd suffices to meet the government's burden on this element. Both were nurses trained to address suicidal and homicidal statements. Both testified that Wynn's statements seemed to be serious statements of an intent to cause harm, and therefore they notified the police. The test is an objective one, so the fact that someone considered Wynn's statements to be serious statements of an intent to do harm is not *ipso facto* dispositive. Nevertheless, the jury could reasonably conclude from the testimony of Kemp and Boyd that a reasonable person would have interpreted Wynn's statements as serious statements of an intent to cause harm.

Wynn next argues that this Court erred in instructing the jury that no proof of intent to act upon his threat was required and the victim did not need to be aware and placed in fear by the threat. That instruction followed Eighth Circuit precedent. The Eighth Circuit has explained:

> [T]here is no requirement that the speaker intended to carry out the threat, nor is there any requirement that the speaker was capable of carrying out the purported threat of violence. However, the speaker must have intentionally or knowingly communicated the statement in question to someone before he or she may be punished for it. The requirement is satisfied if the speaker communicates the statement to the object of the purported threat *or* to a third party.

*Doe*, 306 F.3d at 624 (citations omitted). The law looks at the reaction of a reasonable recipient, not the intent of the defendant as to whether he actually meant to carry out the threat.[1] Therefore, the jury instructions were correct.

## CONCLUSION

The motion for a new trial is DENIED for both counts one and two. Document #54.

IT IS SO ORDERED this 24th day of April, 2015.

*[signature: J. Leon Holmes]*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[1] As Wynn points out, this issue is presently before the United States Supreme Court in *Elonis v. United States*, No. 13-983. This Court has postponed sentencing hoping that the Supreme Court would issue an opinion in *Elonis* but has concluded that further delay would be unfair to Wynn, who is detained. Consequently, Wynn's alternative motion for a stay is denied.